VAN KLEECK *vs.* THE MINISTERS, &c. OF THE REFORMED
DUTCH CHURCH and others.

A will of personal property, or of chattels real which goes to the personal re-
presenatives and not to the heir of the testator, has reference to the state
of the property at the time of the testator's death. And a general residu-
ary bequest in such a will, of all the testator's property not before disposed
of, carries to the residuary legatee not only the personal estate which the
testator did not attempt to dispose of by his will, but also every other part
of the personalty which upon the testator's death is found not to have
been effectually otherwise disposed of by the will.

But a residuary devise of all the testator's real estate not before disposed of
by his will, does not embrace real estate which is in terms absolutely de-
vised to others in the same will; although it is found, upon the death of
the testator, that such real estate is not legally and effectually devised,
either from the incapacity of the devisee to take real estate by devise or by
reason of his death in the lifetime of the testator.

A residuary devise of real estate carries to the residuary devisee not only the
real estate in which no interest whatever is devised to others, but it also
embraces reversionary and contingent interests, which, upon the events
contemplated by the testator, is not wholly and absolutely disposed of
except by such residuary devise.

The heir at law can only be disinherited by express words or by necessary
implication. He is, therefore, entitled to the real estate which is not le-
gally and effectually disposed of by will, although the testator has attempt-
ed to devise the same to others.

THIS case came before the court upon general demur-
rers to the complainant's bill, for want of equity either as
to discovery or relief. The bill was filed by Lawrence L.
Van Kleeck in behalf of himself and the other legal repre-
sentatives, by descent, devise or otherwise, of the residua-
ry devisees of John Haberdinck, who died in 1723. The
complainant stated in his bill that J. Haberdinck, upon a
partition of a certain tract of land called "The Shoemaker's
Field," in the city of New-York, in 1696, became seized in
fee, in severalty, of 40 lots of land, parts of that tract; and
was seized of another part of the same tract, which remain-
ed undivided, as tenant in common of one fifth thereof with
four other persons; that he afterwards leased the greater
part of the said lots to different persons, for long terms, on
annual rents, according to the then value of each lot;

which terms expired at different times between 1751 and 1793; and that he continued seized in fee simple of the lands so leased, subject to such leases, and also seized and possessed of the lands not included in the leases, until his death. The complainant further alleged in his bill, that in 1722, Haberdinck made his will in due form of law for devising real estate; and after bequeathing the bulk of his personal estate to his wife for life and remainder to his own relations, " and not having made *any valid or effectual* disposition of the lots and parcels of land before mentioned, or of any part thereof, or of any interest therein," did further devise in the words and to the tenor and effect following : " And I, the said John Haberdinck, do further give, devise and bequeath unto my said wife Mayken Haberdinck, all the rest of my temporal estate, real and personal, none excepted; whether the same shall be and consist in houses, lands, goods, chattels, gold, silver, monies, negroes, bonds, mortgages, bills, books, debts, or any other estate whatever; none in the world excepted ; to have and hold all the rest and remaining part of my estate (*except what part is above bequeathed and disposed,*) unto my said wife Mayken Haberdinck during her natural life. And after her decease, I give, devise and bequeath one just equal quarter part thereof to my wife's sister Jannatia Boss, widow of John Peterson Boss ; and in case of her decease, to be equally divided between all the children of the said Jannatia Boss, their heirs and assigns forever. One other just and equal quarter part thereof I give, devise and bequeath unto Elsie Sanders, widow of Robert Sanders, another of the sisters of my said wife ; and in case of her decease, to be equally divided among all the children of her the said Elsie Sanders, their heirs and assigns forever. One other just and equal quarter thereof I give, devise and bequeath unto all the children of *Baltus Van Kleeck*, late of Dutchess county, deceased, a brother of my wife, to be equally divided between them, and to their heirs and assigns forever. And the other equal quarter part thereof I give, bequeath and devise to all the children of Catalyntie Van Benthuysen, late of Albany, deceased, another of my wife's sisters, to be equally

divided between them, and to their heirs and assigns for-
ever." It was also alleged in the bill that at the death of
J. Haberdinck, Mrs. Boss, Mrs. Sanders, four children of
Mrs. Van Benthuysen, and five children of Baltus Van
Kleeck were living; among whom was *Lawrence Van
Kleeck,* the grandfather of the complainant; that they all
survived Mrs. Haberdinck, the widow, who died shortly
after the death of her husband; but all died a long time
since; some of them having disposed of their estates by
will, and others having died intestate; that the grandfath-
er of the complainant died in 1769, having by his will de-
vised all his estate to his five children equally; and that the
complainant's father died about fourteen years afterwards,
having devised four fifths of his estate to the complainant
and his three other children, with the benefit of survivor-
ship if any of them should die in their nonage and unmar-
ried, and the other fifth to his two grand children; and that
two of the complainant's brothers and sisters died before
twenty-one and unmarried; by which the complainant be-
came entitled as devisee to two fifths of his father's estate.
The complainant also alleged that the will of J. Haberdinck
was duly proved and recorded in the prerogative court of
the province of New-York, before Gov. Burnet, in Februa-
ry 1723; that soon after the death of the widow, who died
previous to that time, one of the defendants, the corporation
of the Protestant Reformed Dutch Church in New-York,
possessed itself of the original will and subsequently ob-
tained assignments from the tenants of the lands in "The
Shoemaker's Field;" and about the same time entered
into possession of those lands, either under those assign-
ments or under some other claim or pretence of title alleg-
ed by the corporation to have been derived from J. Haber-
dinck; and that for some part the corporation had claimed
and set up, but as the complainant charged without any
just or legal warrant, that the will of Haberdinck contained
a clause devising to the corporation an estate in fee simple
in all the lands which he held in the Shoemaker's Field.
The complainant then set forth the commencement of two
ejectment suits for the recovery of a part of the premises

in dispute; that in such suits he was nonsuited for the want of sufficient proof—the officers of the corporation refusing to be sworn or to furnish him with the evidence in their possession, or to show him the original will or to admit the correctness of the record thereof in the office of the surrogate of New-York; and that he had applied to the officers of the corporation for an inspection of the original will and of the leases and the assignments thereof; and that they refused to allow such inspection. And the complainant prayed that the corporation, and its officers who were made defendants in the suit, might answer the allegations in the bill, and might produce and exhibit for his inspection and the inspection of his attorneys, solicitors, and witnesses, &c. the original will of Haberdinck, and the leases and the assignments, and all leases, deeds, muniments and evidences of title relating to the lands in the Shoemaker's Field executed by or derived from him; and for a discovery and account of the rents and profits of the premises for every year since the corporation went into possession thereof; that the said will might be established by the decree of this court, that the complainant's rights in the premises might be established; that the corporation might account to the complainant, and to the other persons interested under the residuary devise contained in the will, for the rents and profits of the premises; and for general relief.

*P. A. Jay & B. F. Butler,* for the complainants. Where a defendant prevents the complainant's establishing his title at law by retaining the deeds on which the title is founded, equity will compel their delivery. (*Jer. Eq. Juris.* 416. 1 *Ves. jun.* 160. 2 *Id.* 459.) The complanaint was not bound to show that the property in question was embraced by the residuary clause. There are many cases where the devise failing, that the premises devised go to the residuary devisee. As in case of a devise to a monk. (13 *East,* 526. *Perkins,* § 566, 567.) If the general rule is with us, and the defendants claim under an exception, they must show the exception. We say we have a right under the will. The defendants must show we have not. (1 *Paige's*

1837.

Van Kleeck
v.
The Reformed
Dutch Church.

*Rep.* 506.) We have exhausted our remedies at law. We come here for discovery as well as relief. We have not set out the will because we cannot obtain a true copy. (7 *Cowen*, 323. 6 *Wendell*, 232, 233. 8 *Id.* 181. 5 *Pick.* 528.) Whether the heir is entitled in preference to the residuary devisee, will depend upon the intent of the testator. (*Salk.* 239. 1 *Leon.* 251. 2 *Vent.* 285. *Cowp.* 43. 9 *Mad.* 123. 13 *East*, 826. *Cowp.* 299. 11 *East*, 322. 3 *Maul. & Sel.* 300. 2 *Vern.* 690. 3 *Atk.* 486. 3 *Ray.* 1325. 1 *Taunt.* 259. 4 *Ves.* 708. *Talbot's cases*, 157. *Cowp.* 808. 2 *Wm. Black. Rep.* 736.) From these cases it appears that where the devise is void at the time of making the will, and it appears that the testator intended to dispose of all his property, the residuary devisee will take. (*McCartee* v. *Orphan Asylum*, 9 *Cowen*, 437.) The devise to the defendants was void under the statute of wills. The defendants at the date of the will could not take by devise. The residuary clause in this will is very comprehensive. Under it the residuary devisee will take in preference to the heir.

*D. Lord, jr. & G. Wood*, for the defendants. The title of the complainant, as alleged in the bill, is derived under a devise of the rest of the temporal estate, real and personal, of John Haberdinck. But the bill does not show the estate in question to be residuary estate. The complainant claiming under the will as a residuary devisee, and appearing by the bill of complaint to be conusant of the contents of the will, was bound to set forth the substance of the will, that the court might see whether his title as residuary devisee extended to the lands in question. The allegation that the original will is in the hands of the defendants, if it may excuse the offer to produce it, and may relieve the complainant as to the mode of its proof, does not excuse the necessity of shewing its substance, there being no allegation of ignorance thereof. The allegation of the complainant that John Haberdinck, by his will, on which the complainant founds his title, made no valid or effectual disposition of the lands, is not sufficient to show title in a residuary devisee to the same; be-

cause, 1. It is a confused allegation of matter of law, without any allegation of the facts on which the matter of law depends, and a defendant could not safely be required to answer such an allegation; 2. It admits, as a negative pregnant, that the lands in question were devised, and assumes that the residuary devisee takes land devised where the devise is void or ineffectual; whereas the heir at law takes all such lands. (4 *Paige's Rep.* 116.) All devises of land prior to 1830 are specific, whether residuary devises or others, and refer to the actual pointing out of the lands by the will at its date as included in particular or general devises. The residuary devise set forth, contains an express exception of the lands " above bequeathed and disposed of," and the bill does not show what they are. The allegation that the defendants entered under some title subordinate to the aforesaid title of the complainant does not aid the bill, because it is a blind allegation of matter of law, not averring any entry as tenant or by the license of the residuary devisees. The only entry specifically averred is under assignments of leases made by Haberdinck himself; or under title derived from Haberdinck, subordinate to the said title of the residuary devisees, which is no title. The allegations that the estates devised to the defendants were on condition, and that those conditions have been broken, do not give the complainant any rights; because, 1. The devise of the residue having expressly excepted the previous lands disposed of in the will, a residuary devisee could not claim for a condition broken, such condition not being a conditional limitation. 2. The derivative title of the complainant from the original residuary devisee is by devise. But the right to enter on an estate in fee simple for condition broken is not devisable; the secondary devisor not being actually, nor (until the previous estate be defeated by entry) legally seized or entitled within the statute of wills. (2 *Vesey, sen.* 420.) 3. The claim to an account for surplus rents and profits is liable to the same objections; and this right of the complainant depending upon a condition going to the whole estate, cannot be put forward unless a full breach of condition be alleged.

1837.

Van Kleeck
v.
The Reformed
Dutch Church.

THE CHANCELLOR. The bill in this case has been framed with much ingenuity and skill, for the purpose of obtaining from the corporation and its officers a discovery of its title to the property in question, and the defects, if any, which exist in that title; and without disclosing the facts which the counsel for the corporation suppose is a fatal defect in the complainant's own title under the residuary clause of Haberdinck's will. The residuary clause of the will as stated by the complainant, however, refers to a portion of the testator's property which had been previously bequeathed and disposed of. The complainant, therefore, was bound to show that such previous disposition did not embrace the property in question, in the Shoemaker's Field; unless such a presumption is necessarily excluded by the averment that the testator had not in the previous part of his will made any *valid or effectual* disposition of the premises in question. The rules of pleading in this court require that the complainant should show upon the face of his bill that he has what is prima facie a perfect title in himself, before he can call upon the adverse party to disclose his title to the property in controversy, or to disclose under what claim of title he holds such property. It is not alleged by the complainant that he is not perfectly apprised of the contents of the will of Haberdinck. And he probably could not make such an allegation with truth; as it appears from the bill itself that the will was proved and recorded, as a will of personal estate, in the probate office in the city of New York; which record still remains in the surrogate's office. (*See* 2 *R. S.* 59, § 20.) The ground of complaint is that the defendants will not furnish the means to the complainant of proving the execution of the original will, and admit that they have in their possession or under their control the will of which the record in the surrogate's office is a true copy.

If the residuary devisees were not entitled to the premises in question under this residuary clause, whatever actual disposition may have been made of such premises in the previous part of the will which ultimately proved to be invalid and ineffectual to give the estate to the particular de-

visee, the complainant has no claim either to discovery or relief. In other words, if any disposition of the Shoemaker's Field lands could have been made by this will which would have the legal effect to prevent those lands from passing to the residuary devisees under the clause which is set out in the bill, but which might still have been void and ineffectual as a devise to pass the lands to the particular devisee, the complainant was bound to set out that part of the will, to enable the court to determine the question whether there was an interest in the lands undisposed of which would pass to the residuary devisees instead of resulting to the heirs at law of the testator as property undisposed of by the will, upon the events which had occurred. And I think a state of facts may fairly be presumed, consistently with the allegations in this bill, that would prevent these lands from passing under this residuary clause, although no *valid and effectual* disposition had been made which could have the legal effect to prevent the lands from descending to the heirs at law of the testator at his death. The land may have been given, in the previous part of the will, to a devisee who was in existence at the time the will was executed but who may have died before the testator; or to a devisee who was dead at the time of the execution of the will, but the fact of whose death may have been unknown to him, or it may have been given directly to a corporation which was incapable of receiving a devise of the legal title to real estate. In either of these cases, and I have no doubt from the bill of the complainant that one of them was actually the case in relation to this will, there would not have been any *valid or effectual* disposition of these lands, or of any interest therein to such devisee. And yet in one, if not in all of these cases, the land thus ineffectually devised would not have passed to the residuary devisees, but it would have descended to the heirs of the testator, if he had any heirs capable of taking the estate; and if he had not, it would have escheated.

A bequest of personal property, or of chattels real which in cases of intestacy belong to the next of kin and do not descend to the heir at law, always refers to the state of the property at the testator's death. Hence it is perfectly well

settled that a general residuary bequest of the personalty includes every thing which, at the testator's death, is not legally and effectually, as well as in terms, otherwise disposed of by the will. The general residuary clause, therefore, not only embraces reversionary and contingent interests in the personal estate not fully and completely covered by other parts of the will, and which the testator does not attempt to dispose of, but it likewise comprehends any property or interests therein which is in terms bequeathed by other clauses in the will, but which for any reason eventually falls into the general residue. It of course includes legacies and bequests which become lapsed by events subsequent to the making of the will; and also those which were originally void either on account of the illegality of the disposition which the testator attempted to make of his property, or because it was impossible, for any other cause, that the bequest should take effect as he intended it. The case of *Brown* v. *Higgs*, (15 *Ves. Rep.* 709,) cited upon the argument by the complainant's counsel, was, so far as related to the lapsed bequest, decided upon this principle; as the subject of the bequest in that case was a leasehold and not a freehold estate.

It has also been finally settled in England, although some doubt, perhaps, has been thrown upon the question by some of the decisions in this country, that a residuary devise of real estate, or of *all the testator's estate not before disposed of in his will*, carries with it not only the real estate in which no interest is devised in the previous part of the will, but also every reversionary and contingent interest which, in the events contemplated by the testator as apparent from the will itself, is not wholly and absolutely disposed of, and which would be a proper subject of devise consistently with the declared intent of the testator. And most of the cases cited and relied upon by the complainant's counsel were decided upon this principle.

Thus in *Hopewell* v. *Ackland*, (1 *Salk.* 239,) where by the previous clause of the will all the testator's lands, tenements and hereditaments were devised to A. without words of perpetuity, which gave an estate for life only to the devisee,

leaving the reversion undisposed of, it was held that a residuary devise of whatever else the testator had not before disposed of, carried the reversion in fee of the same lands to A. who was the residuary devisee. And the cases of *Doe* v. *Weatherby*, (11 *East's Rep.* 322,) *Wheeler* v. *Walroone*, (*Alleyn*, 28,) *Willows* v. *Lydcot*, (2 *Vent.* 285,) *Hogan* v. *Jackson*, (*Cowp. Rep.* 299,) *Atkyns* v. *Atkyns*, (*Id.* 808,) and *Ridout* v. *Pain*, (3 *Atk.* 485,) were also cases of reversions which the testator had not attempted to dispose of in the previous part of the will; and which, for that reason, were held to pass under the residuary clause. In *Goodtitle* v. *Knott*, (*Cowp.* 43,) the real estate was devised for the payment of debts, only in case the personalty should prove insufficient. And as there was sufficient personal estate for that purpose, the estate, which in that event the testator never intended to devise to his executors, was very properly held to pass under the residuary devise of " all the rest, residue and remainder of all his real and personal estate," to his wife; as property not before disposed of by the will. The case of *Hayden* v. *The Inhabitants of Stoughton*, (5 *Pick.* 528,) also cited by the complainant's counsel, was correctly decided upon the same principle ; the testator having devised a contingent fee in the property to the defendant, leaving the estate undisposed of, except by the residuary clause of the will, in case the condition of the devise was not performed. The specific devise in that case did not fail in consequence of any incapacity of the devisees to take the estate intended for them by the testator ; but from their neglect to perform the condition upon which the devise was made. The contingent estate, therefore, which was properly held to pass to the residuary devisee, was one that the testator must have had in contemplation, as undisposed of by the previous clause of the will at the time such residuary clause was framed ; and which estate he intended should go to his wife, the residuary devisee, in the event which occcurred. It is true Mr. Justice Putnam, in delivering the opinion of the court in that case, supposes that the same principle is applicable to a case where at the time of making the will it is impossible for an absolute and

1837.

Van Kleeck
v.
The Reformed
Dutch Church.

1837.

Van Kleeck
v.
The Reformed
Dutch Church.

unconditional devise of real estate in fee simple to take effect as the testator intends it, although that fact is unknown to him at the time of making his will: as, for instance, a devise of a part of the testator's real estate to a devisee who is afterwards ascertained to have been dead at the date of the will; or a devise in fee which the testator supposed to be valid and effectual at that time, but which turns out to have been illegal and void. This part of the opinion, however, like that in *Crane* v. *Crane,* (2 *Root's Rep.* 489,) was entirely *obiter ;* not being called for by the facts of the case then under consideration. And I observe in a subsequent case before the same court, (*Brigham* v. *Shattuck,* 10 *Pick. Rep.* 309,) that Chief Justice Shaw, although he fully concurs in the correctness of the decision that a contingent or reversionary interest in real property, which is not disposed of by the terms of the will as a specific devise, will pass by the residuary clause, carefully avoids the use of any expression which might be considered as sanctioning the *obiter dicta* of Putnam J., in *Hayden* v. *Stoughton,* as to the effect of the residuary clause upon an interest in real estate absolutely devised by a previous clause of the will, but which devise is void or ineffectual on account of the incapacity of the devisee to take the property according to the intention of the testator at the date of the will. That question, which is of the highest importance to the complainant in this case, I shall presently proceed to consider. The rule as to reversionary and contingent interests not previously devised, as now settled in England, appears to be, that a general residuary clause will carry all such interests to the residuary devisee, unless the will contains special indications of a contrary intention on the part of the testator. In other words, the legal presumption is that the residuary clause was intended to embrace such contingent and reversionary interests, in the absence of any other evidence of the testator's intention appearing upon the will itself when taken in connection with the situation of the testator's property and family at the date of the will. And taking the rule with this qualification I cannot say that the decisions in this country, to which I referred as having thrown some doubt on the question, are directly in conflict with the rule as now settled

in the English courts. (*See Newkirk* v. *Newkirk*, 2 *Caines'*
*Rep.* 345. *Den* v. *Mills*, 1 *Car. Law Rep.* 535. *Kennon*
v. *McRoberts*, 1 *Wash. Rep.* 97. *Horde* v. *McRoberts*, 1
*Call's Rep.* 337. *James* v. *James*, 4 *Paige's Rep.* 45.)

The distinction between a lapsed devise of real estate
and a lapsed legacy of the personalty, as to the rights of the
residuary devisee and legatee, is now fully recognized.
The question first arose in the court of king's bench, in the
case of *Goodright* v. *Opie*, (8 *Mod. Rep.* 123,) about the
time of the making of the will under which the complain-
ant claims in the present suit. But the case was not then
decided ; two of the judges being of opinion that the lands
attempted to be disposed of by the lapsed devise descended
to the heir at law ; and the other two, *Eyre* and *Fortescue
Aland*, holding that, as in the event which had occurred
there was no valid or effectual disposition of the lands em-
braced in the specific devise which had become lapsed by
the death of the devisee in the lifetime of the testator, those
lands were devised to the defendants who were the residu-
ary devisees. The question, however, was decided in favor
of the heir, and against the residuary devisee, in the case of
*Wright* v. *Hall*, (*Fortesc. Rep.* 182,) in the court of com-
mon pleas, in 1724, by Lord King and his associates a few
days before he received the great seal. And the question
again arose and was decided in the same way, in 1728, in
the case of *Roe* v. *Fludd*, (*Fortesc.* 184 ;) Eyre and Fortes-
cue Aland, who had formerly entertained a different opin-
ion, having then been transferred to the common pleas, and
concurring in the decision. The same question was again
raised in the case of *Doe* v. *Underdown*, (*Willes' Rep.* 293,)
thirteen years afterwards, while Ch. J. Willes presided in
the court of common pleas. It was examined by that dis-
tinguished judge with his usual ability, and was again de-
cided in conformity with the previous decisions. Since that
time the question does not appear to have been raised in
favor of the claim of the residuary devisee to the benefit of
a lapsed devise. And I confess I can see no material dif-
ference between devises of that description and those which
are void at the time of making the will, on account of the

1837.

Van Kleeck
v.
The Reformed
Dutch Church.

incapacity of the devisee to take the estate which the testator supposes he is bestowing upon the particular devisee, and has, therefore, no intention of giving to the residuary devisee of the rest of his estate. The right of the heir at law does not in either case depend upon the intent of the testator to give him that part of the estate ; but upon the principle that the heir is entitled to every part of the estate which the testator has not shown a clear intention of giving to some other person who, in the event that has occurred, is capable of taking the estate thus intended for him by the testator. As the testator is presumed to be *inops consilii* at the time of making his will, if he devises an absolute fee in a portion of his estate to a person who happens to be dead at the time, or to a corporation which is destitute of a legal capacity to take lands by a direct devise, there appears to be as strong evidence of the non-existence of any intention to have that portion of the estate pass to another person under the devise of the residue of the estate, as if he had devised the same portion of the estate to a person who was then capable of taking, but who might become incapable by death during the lifetime of the testator. I cannot see that in either case there is the slightest indication of an intention on the part of the testator to give to the residuary devisee that portion of the estate which he believed he had just before disposed of absolutely to another; and which, for that reason, he has excepted from the general residuary devise, by the description of property therein before devised or disposed of. The right of the heir devolving upon him by operation of law, cannot be impaired by vague surmises of what the testator would or ought to have done if he had foreseen that the disposition he had made of his estate might be declared invalid or ineffectual. An heir can only be disinherited by express words or necessary implication. As a different opinion, however, appears to have been entertained by one at least of the judges of a very respectable court in this country, it may be proper to review the leading cases on this subject.

The earliest case I have been able to find is *Bevet* v. *French*, referred to by the counsel upon the argument of *Sherwood* v. *Normes*, in 1589, (1 *Leon.* 250.) And if the

counsel was right in supposing that such a decision had been made as he there stated, it shows that some court had decided, at that early day, that the heir at law might be excluded, for the benefit of a residuary devisee, to whom the testator did not intend to give the property unless it was in the character of a trustee for the objects of the former charitable devise which was void for uncertainty. This case, however, cannot be relied on as authority, as it does not appear by what court it was decided or what were the particular terms of the devise. All that appears from the statement of the case is, that it was decided contrary to the intention of the testator. It was in that view only that the decision was referred to there. And in the language of the court in *Wright* v. *Howe*, "it ought to be well considered" before it is followed as a precedent. It is evident also from the decision in this last mentioned case, to which I have before referred under the name of *Wright* v. *Hall*, that the case of *Bevet* v. *French* was not considered as an authority which could be relied on.

Then came the case of *Cruise* v. *Barley*, before Sir Joseph Jekyel, in 1727, (3 *P. Wms.* 19,) in which it was decided that a legacy out of the proceeds of real estate, which legacy failed by the death of the legatee before it became vested, belonged to the heir at law instead of the residuary legatees of the fund. This was followed by the two cases of *Roe* v. *Fludd* and *Doe* v. *Underdown*, which I have before stated. Then followed the case of *Arnold* v. *Chapman*, before Lord Hardwick, in 1748, (1 *Ves. sen.* 108,) which arose upon the statute of mortmain, passed in 1735, and it was there held that the devisee of real estate, upon condition of paying £1000 to the executors, which they were directed to appropriate to a charitable purpose void by the statute, was not entitled to the land discharged of the payment; but that the object of the charitable devise having failed, the £1000 resulted to the heir at law as a portion carved out of the real estate, and not legally disposed of by the will. The case of *Durour* v. *Motteaux*, (1 *Ves. sen.* 321,) came before the same distinguished judge the next year. The will in that case, which is more correctly stated in a note to the

case of *Jones* v. *Mitchell*, (2 *Sim. & Stu.* 290,) directed all the testator's real and personal estate to be converted into money; which in a subsequent part of the will he denominated his *personal estate*. And he directed the same, after the payment of debts and legacies, to be invested and the income to be applied to certain persons for life with the right of survivorship, and that, after the decease of the survivor, the residue of the principal of the fund should be equally divided among their children. Among the legacies given out of the principal of this mixed fund was one of £1200 for charities to be invested in real estate, which direction of the testator was void under the statute; and the question arose as to who should have the benefit of the charity legacy, the heir at law or the residuary legatees. Lord Hardwick decreed in favor of the latter upon the ground that the testator intended to consider the whole as personal property; and that it must therefore go to the residuary legatees as in the ordinary case of a residuary bequest of personal estate. Although the more modern cases in England appear to be in conflict with this decision, even on the ground upon which his lordship bases his decree, it is very evident he did not intend to decide that in the ordinary case of a residuary devise of the testator's real estate not before disposed of by the will, the residuary devisee would take particular portions of the estate which the testator had devised to other persons, although the disposition thereof which he had attempted to make was void or ineffectual. On the contrary he says, in terms, that it is not necessary to enter into that question, as to which there had been a difference of opinion, but that the last decision had been in favor of the heir at law; alluding unquestionably to the difference of opinion which had once existed between the judges of the court of king's bench in *Goodright* v. *Opie*, and to the then recent decision of the court of common pleas in *Doe* v. *Underdown*, in favor of the heir at law as against the residuary devisee.

The case of *Jackson* v. *Hurlock*, (2 *Eden's Rep.* 263,) came before Lord Northington fifteen years afterwards; in which case the question arose whether a void charge which the testator had made upon an estate *previously* devised to

others was to be raised for the benefit of the heir at law, or should sink into the estate for the benefit of the devisee, and the decision was in favor of the latter. This was not the main question in the case, and we may suppose that but little thought had been bestowed upon it from the fact stated in the report of the case by *Ambler*, that when his lordship's decision was pronounced upon the other questions, he had forgotton that any such question was to be decided in the cause. But when reminded of it by the talented but unfortunate Charles York, afterwards Lord Chancellor Morden, who was counsel in the cause, he said, "I am very clear that the void legacies sink into the estate for the benefit of the devisee." (*Ambl. Rep.* 495.) I think, however, the decision was right under the particular circumstances of that case.

In the case of *Gravenor* v. *Hallum*, which came before Lord Camden, in 1767, three years afterwards, the question arose between the heir at law and the residuary legatee of the proceeds of real estate directed to be sold ; the testator having given certain legacies out of the proceeds which were void by the statute, and the decision was in favor of the claim of the heir at law. (2 *Blunt's Amb.* 645.) In the reasons of the chancellor for this decision, as found in Sergeant Hill's manuscripts, he says as to this part of the case, " with regard to the distinction betwixt a devise of the residue of real and of personal estate, the ground upon which it has been determined that the latter shall take in all lapsed legacies is that personalty is fluctuating. The words *rest and residue* exclude the antecedent gifts in the natural way of construing a will; but it is holden otherwise. The courts of law, however, have taken a different way in real estate for the benefit of the heir at law, whom neither those courts nor a court of equity will disinherit without sufficient words. *I should think it too nice a distinction between a legacy becoming void ab initio and afterwards.* The rule is this : where, from the general intention of the testator, the residuary legatees shall not take because by the penning of the will there is a less thing given to them and the gift to the legatees is narrowed, the

court will favor the heir at law." And in the case of *Smith* v. *Saunders*, (2 *W. Black. Rep.* 736,) decided in the court of common pleas in 1770, by C. J. De Grey and his associates, it was held that a residuary devise of all the testator's lands not therein before devised would not carry to the residuary devisee a reversion which the testator supposed he had disposed of by his will; but which disposition was void on the ground that the heir at law could not take by devise an estate which would have descended to him by operation of law if the devise had not been made. In this case De Grey, C. J., says: " The whole is a question of intention, and you can never infer intention from a sweeping residuary clause." And Blackstone, J., says " *residue and remainder* are relative expressions, and must refer to what had been before devised. Whether the devise of the reversion to his right heirs could, in point of law, take effect or not it is in fact devised. And by such devise *de facto* it is, as Lord Hardwick expresses it, excepted out of the general residuary clause."

Such, therefore, was the settled law of England at the time of the revolution, in regard to this question; and such would be the law in this state, even if subsequent decisions had changed the rule in that country so as to give to the residuary devisee every estate or interest of the testator of which he had not made a valid and effectual disposition by the other provisions of the will. It will be found, however, that instead of changing the rule the cases in England since the revolution have been, with one or two exceptions, in accordance with the rule as settled by the decisions previous to that time. The case of *Hutchinson* v. *Hammond*, (3 *Bro. C. C.* 128,) came before Mr. Justice Buller, sitting for the lord chancellor, in 1790. It was the case of a void devise of a part of the fund to be raised by a sale of real estate. The legacy had been given by the original will, but it was void on account of the death of the legatee before the republication of the will by a subsequent codicil; that fact being known to the testator but not noticed by him in the codicil. And the amount of the legacy was adjudged to belong to the heir and not to the residuary legatee of the

fund. The cause was afterwards reheard before Lord Thurlow, who at first gave a clear and decisive opinion against the claim of the heir, upon the ground that the testator had intended to consider the fund as personal estate. But upon a re-argument he changed his opinion and finally decided the case in conformity with the previous decision, against the residuary legatee ; and the decree of Mr. Justice Buller was affirmed. In *Collins* v. *Wakeman*, before Lord Rosslyn, in 1795, (2 *Ves. jun.* 683,) the testator devised his real estate to be sold ; and the executors and trustees, among other things, were directed to pay out of the proceeds of the same £1000 according to such instructions as he might leave in writing. And the residue was devised to Wakeman, the defendant, by a general clause as broad as that used by Haberdinck in his will, now under consideration. But there being no valid disposition of the £1000, the testator having left no instructions in writing relative thereto, it was decided that it belonged to the heir at law, and not to the residuary legatee, as an interest in the proceeds of real estate undisposed of by the will ; although the testator had in terms directed that the proceeds of the sale should be considered as personal estate.

Then came the case of *Kennell* v. *Abbott*, before Lord Alvanley, the master of the rolls, in 1799, (4 *Ves. Rep.* 800 ;) in which the testatrix having power to dispose of her separate estate had given to her supposed husband a part of the proceeds of a copyhold estate and of her leasehold property. And the legacy to the supposed husband being void, on the ground that he had imposed himself on the testatrix when he had another wife living, the amount of the legacy was decreed to the residuary legatee upon the ground that the testatrix had made the whole of this mixed fund personal estate by her will. This case, it will be seen, was decided in direct hostility to the decision of Lord Rosslyn in the previous case of *Collins* v. *Wakeman ;* in which a positive direction to consider the proceeds of the sale as personal estate was held insufficient to carry the void legacy to the residuary legatee. But the master of the rolls did not even intimate an opinion that the residuary devisee

could have taken under the residuary clause if the fund undisposed of was not considered as personal estate. In the subsequent case, however, of *Doe* v. *Sheffield*, which came before the court of king's bench in 1811, (13 *East's Rep.* 526,) although the final decision of the court was placed upon another ground, all the judges concurred in the opinion that a residuary devise of all the testator's estate undisposed of would give to the residuary devisee a portion of the estate which was previously devised to a person who was dead at the time of the execution of the will. If the authority of that case had been subsequently recognized it would certainly have changed the strong current of decisions, in favor of the claims of the heir at law in such cases, which had existed for nearly a century. But its effect was entirely destroyed by a decision of the house of lords the other way three or four years afterwards. It may, therefore, be considered as a solitary case of the expression of an opinion by the judges of a court, upon a point not necessary to the decision of the cause then under consideration, in opposition to the generally received opinion of the profession in that country, and without referring to a single adjudged case which had the least bearing upon the question.

In the case of *Gibbs* v. *Rumsey*, (2 *Ves. & B.* 294,) which came before Sir Wm. Grant only two years afterwards, no notice whatever is taken of this decision; although if considered as good law it must have changed the result in that case as to the void legacies for charitable purposes which were payable out of the proceeds of real estate; as to which legacies his honor said it was clear that they belonged to the heir at law, and did not go either to the residuary legatee of the proceeds of the real estate and of the personalty, or to the next of kin.

Then followed the case of *Tregonwell* v. *Sydenham*, before the house of lords, (3 *Dow's Rep.* 194,) which was argued in 1814 in the presence of those two distinguished chancellors, Lord Redesdale and Lord Eldon, and decided in the following year after a very full consideration. And it was there held, reversing the decree of the court of exchequer, that a portion carved out of a trust term for pur-

poses which were void in law, so that the persons for whose use the portion was intended could not take the same, did not go to the devisee of the residue of the estate, or sink into the estate for his benefit ; but that the same must be raised for the benefit of the heir, as an interest in real estate resulting to him by the failure of the specific devise thereof. This case was followed by that of *Jones* v. *Mitchell,* before the vice chancellor, Sir John Leach, in 1823, (1 *Sim. & Stu.* 290;) in which it was held that a void legacy, payable out of the proceeds of real estate, belonged to the heir at law and did not go to the residuary legatee of the fund, who was also the legatee of all the testator's other estate. The vice chancellor in delivering his judgment in that case says—" The will, as to personal estate, speaks at the time of the death of the testator, and the residuary legatee takes not only what was undisposed of by the expressions of the will, but that which becomes undisposed of at the death by disappointment of the intentions of the will. It is otherwise as to the residuary devisee of real estate or of the price of real estate. As to him the will speaks only at the time of making it, and he can take nothing but what was at that time intended for him."

The last case upon this subject to be found in the English reports is that of *Cook* v. *The Stationers' Company,* which came before the same distinguished equity judge, as master of the rolls, in 1831, (3 *Myl. & Keen,* 262.) And he there lays down this rule for the purpose of ascertaining the intention of the testator where the residuary devise is not of the produce but of the *corpus* of real estate ; and where the intention of the testator as to a previous specific devise is defeated : 1st. If the devise to a particular person, or for a particular purpose, is to be considered as intended by the testator to be an exception from the gift to the residuary devisee, the heir takes the benefit of the failure. 2d. If it is to be considered as only a charge upon the estate devised and not an exception from the gift, the devisee will be entitled to the failure. And considering the void legacy in the case then before him as coming within the last of these rules, he decreed accordingly. Testing the residuary clause

in Haberdinck's will by these rules it is very evident that any *invalid or ineffectual* devise of the property in controversy which the testator had made, to this corporation or otherwise, in the previous part of the will, must belong to the heir at law, or to the crown by escheat if there was no heir at law capable of taking; as it is in terms excepted from the residuary devise.

The only cases to be found in the American reports where this question has directly arisen, unless there are some which have eluded my search,[a] are *Lingan* v. *Carrol*, decided in Maryland in 1793, (3 *Har. & McHen. Rep.* 333;) and the recent case of *Greene* v. *Dennis*, in the supreme court of errors in Connecticut, (6 *Conn. Rep.* 292.) And in both of these cases the decision was against the claim of the residuary devisee. In the first case the testator devised his real estate in Maryland and the reversion of certain real estate in Pennsylvania after the death of his wife, for the benefit of a charity; which devise was afterwards adjudged to be void; and the residue of his estate, real and personal, *not therein before disposed of*, to the children of Mrs. Lingan and Mrs. Wood. And a bill was filed by the residuary devisees for an account of the rents and profits of the estate, which had been claimed by the heir at law as undisposed of by the will. Chancellor Hanson declared and decreed that the law being settled, that in case of a lapsed devise the land should go to the heir and not to the residuary devisee, and there being no solid distinction between the case of a lapsed devise and a devise void by the rules of law, as it was manifest in both cases that the testator did not intend the land *de facto* devised to go to the residuary devisees, the complainant's bill contained no matter of equity. He accordingly dismissed the same; and his decree was afterwards affirmed by the court of appeals. In the Connecticut case there was a devise of a particular farm to *the yearly meeting of Quakers*, with a residuary devise to Green of all the rest and residue of the testator's estate of what kind or value it might be, or wherever found, *not therein otherwise disposed of.* And the devise of the farm being declared void, the court also decided that

(a) See *Lessee of Ferguson* v. *Hedges*, 1 *Harrington's Rep.* 524.

the farm belonged to the heir at law, and not to the residuary devisee. See also the dictum of Carr, J. in *Rowlet* v. *Rowlet*, (5 *Leigh's Rep.* 26.)

The result at which I have arrived, upon a full examination of the subject, is that there is not sufficient appearing upon the complainant's bill to show that the residuary devisees of Haberdinck ever had any legal or equitable right to the premises in controversy in this cause. And that if there was not any previous devise or disposition of the lands in the Shoemaker's Field *in fact* by the will of Haberdinck, the complainant should have so stated it in his bill ; or he should have set out the substance of the whole will, as it appears from the record thereof in the surrogate's office, so that the court might see whether the residuary legatee under whom he claims had some right or interest in the property under the will.

The suggestion in the bill that if the premises were devised to the corporation there is a surplus of rents and profits beyond what was necessary to satisfy the object of the devise amounts to nothing, as the complainant insists there was no valid or effectual devise to the corporation. And the decision of the court of dernier resort in the case of *McCartee* v. *The Orphan Asylum Society*, (9 *Cowen*, 437,) conclusively settles the question that the corporation could not take the estate by devise. If there was therefore a devise in form to the corporation for the objects or upon the trusts stated, or rather suggested in the bill, the devise was wholly void ; so that there could have been no resulting trust of a surplus of rents and profits for the benefit of the residuary devisees. Even if there was a valid devise to the corporation, it does not follow of course that the surplus rents and profits arising from the increased value of the property belong to the descendants of the residuary devisees. (*See Attorney General* v. *Wilson*, 3 *Myl. & Keen*, 372 ; *The Same* v. *Brazen Nose College*, 8 *Bligh's Rep. N. S.* 377.)

The demurrer is well taken and must be allowed *nunc pro tunc* as of the time of the argument ; one of the defendants having since died.