## LYDIA E. W. MOSS ET AL. v. FLORENCE L. HELSLEY ET AL.

(Case No. 1314.)

1. WILLS — JUDGMENT.— Under statute giving to the district court original and exclusive jurisdiction of the probate of wills, its judgment annulling and setting aside a will was conclusive, and in the absence of evidence showing that the validity of the will was put in issue by the pleadings, every presumption will be indulged in favor of the judgment.

2. LEGACIES.— If in the settlement of an estate there is a deficiency of assets, it must be supplied, first, from the general legacies, and the special legacies will not abate in favor of creditors until the general legacies are exhausted. But if special legacies cannot be supplied from the particular fund designated, the legatee cannot be compensated out of other effects of the estate.

3. WILL.— While the husband cannot dispose, by will, of his wife's community interest, yet if he attempts to do so, and she should elect to take under the will, she would be thereby estopped from afterwards asserting her right to the community.

4. SAME.— The intent to dispose, by will, of the husband or wife, of the community interest of the connubial partner, must be evidenced by explicit language. A will by the husband, devising "my interest in about one thousand six hundred acres of land patented to Rice M. and Mary S. Gatewood," which was community property, conveyed only the husband's undivided half thereof.

5. SAME.— Resort may be had to all the provisions of a will in a case of doubt, to determine whether it was the purpose of the testator to dispose of his wife's interest in community property.

6. SAME.— The husband made a deed, conveying community land, which was not delivered. *Held*, that the wife who, as executrix, after the husband's death, refused to deliver the deed (there being no fraudulent intent on her part), could not be made liable to parties claiming under the deed for the value of their interest in the land lost thereby.

7. VOID BEQUESTS.— A special bequest to one who was dead when the will was made is void. What shall then become of the bequest must be determined from a construction of the entire will.

8. SAME.— Where a special bequest was made to the son (who was already dead), and to "his heirs and assigns forever," with another clause conveying to the testator's wife "all the remainder of my estate in lands, goods, chattels, credits and rights," but precluding her from disposing of property willed to the children, it was held that the property embraced in the void bequest was subject to the laws of descent and distribution.

9. CONSTRUCTION OF WILLS.— The rule which requires the court to submit for the consideration of the jury a written instrument, with all the attendant facts connected with its execution, when its effect does not depend entirely on the meaning of its terms, but on extrinsic facts and circumstances, applies to wills.

APPEAL from Johnson. Tried below before the Hon. Jo Abbott.

The following statement, adopted by the commission of appeals, is made:

Suit by appellees, Florence L. Helsley and her husband, James M.

Helsley, against Lydia E. W. Moss and her husband, James S. Moss, and Mary, or Mollie, Pierce, a minor, alleging that plaintiff, Florence L. Helsley, and defendant, Mary Pierce, were the children of George M. Pierce, deceased, and his wife, the defendant, Lydia E. W. Pierce (now Moss); that George M. Pierce died in 1863, leaving Florence L. and Mary, his only surviving children, and Lydia E. W., his surviving wife, and leaving a large amount of property, consisting of lands and personal property; that the property went into the possession of defendants, and that they held the same, which was and is community property; that plaintiff, Florence, was the owner of one-fourth of said property; that there was no administration, nor any necessity for any; praying for partition of the land and personal property, or for one-fourth the value of the personal property, if wasted, etc. Petition filed 24th of May, 1877. The defendants, Lydia E. W. and James S. Moss, answered 17th of December, 1877, by —

1st. General demurrer.

2d. General denial.

3d. Special answer, alleging the marriage of Lydia E. W., then Lydia E. W. Barnes, with George M. Pierce, on the 6th of December, 1857. Issue of said marriage, Florence L., one of the plaintiffs, Mary Pierce, one of the defendants, and Jackson Hill Pierce, now deceased; that George M. Pierce, on the 21st of May, 1863, made his will in writing, and died the 17th of July, 1863, in Johnson county, Texas; that the will was probated in Johnson county on the 28th of September, 1863, and Lydia E. W., the executrix named in the will, appointed executrix independent of the court, etc. The will gave to Florence L. and Mary Pierce, daughters, and Jackson Hill Pierce, son, of the testator, each one-third of the testator's interest in about one thousand six hundred acres of land patented to Rice M. and Mary S. Gatewood, near the town of Buchanan, in Johnson county, Texas, and to each of said children one colt and one heifer calf and their increase, also one hundred dollars in money to each, and to Jackson Hill Pierce, in addition thereto, the testator's library of law books or their proceeds, his compass and gold watch.

He made his wife his residuary legatee and devisee, giving her all the remainder of his estate in lands, goods, chattels, etc., and appointed her executrix independent of the probate court and without bond.

The answer alleges that the defendant, Lydia E. W. Pierce, on the 28th day of September, 1863, qualified as executrix, and has

ever since acted as such; that Jackson Hill Pierce, one of the legatees in the will, died the 12th of May, 1863, before the said will was executed, leaving no wife, children, or their descendants; that Florence L. and Mary were the only children or descendants of said George M. Pierce; that Lydia E. W. was the mother of Jackson Hill Pierce, and, as residuary legatee and devisee of the will of George M. Pierce, entitled to the share devised and bequeathed to Jackson Hill Pierce, deceased.

The answer further alleged that the interest of George M. Pierce in the Gatewood land near Buchanan extended to only about four hundred acres, including a part not then located; that said four hundred acres was the community property of Lydia E. W. and George M. Pierce; that George M. Pierce's interest was one-half of said community land; that the testator could not and did not convey her half of said community; that Lydia E. W. was ready to deliver and set apart to Florence L. and Mary their shares in the land devised to them by will and to deliver to them the other property, money, etc., bequeathed to them, and had delivered the stock and increase thereof to Florence L. Helsley; that she had raised and educated Florence L. and Mary as directed by the will, and managed their property, at an expense of at least $2,500 for each of them, and prayed judgment for that amount in the event of a recovery by them beyond the terms of the will; also, set up title to and described certain lands conveyed to her by direction of George M. Pierce. in lieu of the $800, her separate property; claimed the residue of the estate not bequeathed and devised to Florence L. and Mary; claimed to have paid all the debts against said estate, costs of probating will, etc., etc.

L. B. Davis, Esq., appointed by the court guardian *ad litem* for the minor, Mary, or Mollie, Pierce, etc., filed pleadings admitting the execution of the will of George M. Pierce, his death, the probate of his will, the appointment and qualification of Lydia E. W., as his executrix, all as alleged by defendants, Moss and Moss, in their answer; that she as such executrix took all the property belonging to the estate in her possession, consisting of two thousand acres of land, etc., including the property willed to Mary; that the interest of George M. Pierce in the Gatewood land was an equal undivided half interest in one thousand six hundred acres; that George M. Pierce acquired his interest by agreeing to locate, patent and pay expenses, the certificates belonging to Rice M. and Mary S. Gatewood; that George M. Pierce and his father, Jacob Pierce, agreed between themselves that George M. should

Statement of the case.

do the work and Jacob furnish the money to pay expenses, and that they should share the locative interest in the land between themselves equally; that Jacob Pierce did furnish the money for the same and became entitled to his share in the land under the contract; that afterwards George M. Pierce traded to Jacob Pierce three hundred and twenty acres of land near Kinnard's, patented to Morgan P. Ellis, assignee of A. Estep, for Jacob's interest in the Gatewood land; that before passing the deeds to the lands George M. Pierce went into the C. S. army, and that in 1863 he made a deed to his father, Jacob Pierce, for the three hundred and twenty acres of the Estep land, and at the same time made his will and sent the deed and will both together, with a copy of the will and a letter, to the defendant, Lydia E. W., which were received by her, with instructions to deliver the deed to Jacob Pierce, which Lydia E. W. expressed a willingness to do, but failed to deliver; that afterwards Jacob Pierce sold all his interest in all lands in Johnson county, Texas, to W. Pierce and R. Beall, who after their purchase demanded said deed to the three hundred and twenty acres from Lydia E. W.; that she refused to deliver the deed, stating that she wanted the land near Kinnard's for the children; that W. Pierce and R. Beall were forced to sue for Jacob Pierce's interest in the Gatewood land, and did bring suit in the district court of Johnson county, Texas, against the defendants, Lydia E. W. and James S. Moss and Florence L. and Mary, for one-half of the eight hundred acres out of the Gatewood land, and did recover of them; that Lydia E. W., controlled by her husband, James S. Moss, withheld the deed to the three hundred and twenty acres, for the purpose of compelling Pierce and Beall to sue for the Gatewood land, knowing that Florence L. and Mary would thereby be deprived of one-half of the Gatewood land, and with intent to appropriate the three hundred and twenty acres Estep land near Kinnard's to their own use and benefit, to the damage of Florence L. and Mary, $2,000; that the land recovered by Pierce and Beall was then and now is worth $5 per acre; that Lydia E. W. knew, before she qualified as executrix, that George M. Pierce intended to will and had willed said eight hundred acres to his children, and had deeded said three hundred and twenty acres to Jacob Pierce; that the deed, will and letter were written by George M. Pierce while absent from home in the army, and anticipating early death; that he was killed before he returned home. The petition of Mary prayed for one-half of the remainder of the eight hundred acres not decreed to Pierce and Beall of the Gatewood land, and all the personal property devised to her in the

will, and one-half of the three hundred and twenty acres of the Estep land, in lieu of that part of the Gatewood land recovered by Pierce and Beall; and if that cannot be done, for judgment over against the defendants, Lydia E. W. and James S. Moss, for the value of the land recovered by Pierce and Beall in the suit No. 520, and for costs; and that her part of the land be set apart to her, and for appointment of commissioners, etc.

Mary Pierce denied all the allegations in the original answer of L. E. W. and J. S. Moss, except such as were admitted in her petition filed herein, and alleged that Lydia E. W. accepted and took under the will of Geo. M. Pierce; never claimed any community interest in the Gatewood land, or any part thereof; always recognized and treated the Gatewood land as belonging to Florence L. and Mary, and as administratrix inventoried it as the property of Geo. M. Pierce; never made claim to it till the institution of this suit, being over fourteen years from her qualification as executrix.

That in 1871, the judgment in the suit of Pierce and Beall v. defendants Moss and Florence and Mary was rendered, by which the Gatewood land was recovered; that the judgment was still in full force.

The plaintiffs, Florence L. and James M. Helsley, filed original amended petition 19th June, 1879, abandoning all of the prayer in the original petition that was different from and not in accordance with the prayer of plaintiffs' first supplemental petition.

Plaintiffs, Florence and her husband, filed first and second supplemental petitions 19th June, 1879, excepting to the answer of defendants, Moss & Moss, denying the facts in the answer, except such as are admitted, which are: The execution and probate of the will of Geo. M. Pierce; the appointment and qualification of Lydia E. W. as executrix; adopting substantially the pleadings of Mary Pierce, and claiming a like share for Florence L. under the will; abandoning the prayer of her original petition not in accordance with the prayer of her supplemental petition.

Defendants, L. E. W. and J. S. Moss, by answers, excepted to petition of defendant Mary Pierce. Also setting up claim of Lydia E. W. Moss, formerly Pierce, as residuary legatee under the will, to all the property of the deceased, except that specially devised and bequeathed to Mary and Florence; praying that the property be decreed to her, and that she be quieted in her title to the same; that certain lands (describing them) were her separate property, conveyed to her by direction of Geo. M. Pierce, in lieu of the $800, her separate money, mentioned in his will.

Special issues were submitted to the jury, and upon their findings the court rendered judgment: First, that defendants, L. E. W. and J. S. Moss, recover all of the personal property willed by George M. Pierce to Jackson Hill Pierce; that Florence L. Helsley and Mary Pierce recover, as heirs at law, the one-third of the land devised to Jackson Hill Pierce, and that they recover the remaining two-thirds of the eight hundred acres of the Gatewood land devised to them under the will, and also recover from Lydia E. W. Moss and James S. Moss $2,000 in lieu of four hundred acres of the ‚Gatewood land recovered in the suit of Pierce and Beall against them and James S. and Lydia E. W. Moss, and that the defendants, Lydia E. W. and James S. Moss, pay all costs, and that execution issue for $2,000 and costs; divesting title out of defendants, Moss and Moss, and vesting title in the plaintiffs and Mary Pierce to the following described land: Two hundred and twenty-seven acres, seventy-three acre certificate, one hundred and forty-three acres of land, twenty-four acres of land, and nine acres of land; appointing commissioners to partition the land between plaintiffs and defendant, Mary Pierce, giving one-half to each.

The defendants, Lydia E. W. and James S. Moss, made a motion for a new trial on the 23d of June, 1879. On the 3d of July, 1879, the defendant, Mary Pierce, and plaintiffs, Helsley and Helsley, filed a *remittitur* of $430 of the judgment and to the nine-acre tract of land. On the 3d of July, 1879, the motion of defendants Moss and Moss for a new trial was overruled, to which the defendants, Lydia E. W. and James S. Moss, excepted, and gave notice of appeal to the supreme court, assigned errors, and have brought the case to this court by appeal.

The following facts are admitted by all parties to be true: George M. Pierce and Lydia E. W. Barnes, afterwards Lydia E. W. Pierce, now Moss, and defendant herein, were married December 6, 1857; that plaintiff, Florence L. Helsley, and defendant, Mary Pierce, and Jackson Hill Pierce, were the only issue of said marriage; that Jackson Hill Pierce died the 12th of May, 1863, without leaving wife or issue, being a minor; that afterwards, on the 21st of May, 1863, George M. Pierce made his will, not knowing at the time that Jackson Hill Pierce was dead; the death of George M. Pierce, July 17, 1863; the probate of his will, the appointment and qualification of Lydia E. W. Pierce, now Moss, executrix, on the 28th of September, 1863; the return of an inventory of the estate by her; that said Lydia E. W. and George M. Pierce lived together as husband and wife up to the death of George M. Pierce; that defendant,

Lydia E. W., is the person named in the will as the wife of George M. Pierce, and Florence L. Helsley is the daughter of George M. Pierce, and is the Florence L. Pierce named in his will; that Mary Pierce is the daughter of George M. Pierce, and the person named in his will as Mary Pierce; that defendant, Lydia E. W., executrix, has paid all debts known to exist against the estate of deceased, and has raised and educated Florence L. up to the time of her marriage with J. M. Helsley, and has raised and educated Mary Pierce up to the time of trial, as directed by the will; that she has also delivered to Florence L. the filly and heifer and increase of both; that the Gatewood land was community property of George M. Pierce and his wife, Lydia E. W., at the time of making his will; that by the judgment of the district court of Johnson county, Texas, of W. H. Pierce and Richard Beall v. Lydia E. W. Moss, James S. Moss, Mary Pierce and Florence L. Pierce, now Helsley, on the 14th of April, 1871, the following tracts of the Gatewood land were recovered by the plaintiffs in said suit: one hundred and fifty acres in one tract, and one hundred and sixty-four in another tract; that tracts containing two hundred and twenty-seven acres, one hundred and forty acres, twenty-four acres and seventy-three acres certificate, being in all four hundred and sixty-four acres of the Gatewood land, remained the property of the estate; that the remainder of the Gatewood land, eight hundred acres, is the property of the grantees, Rice M. and Mary S. Gatewood. That the inventory rendered by the executrix mentioned the Gatewood land as eight hundred acres of land, being an undivided half of sixteen hundred acres granted and patented in the name of Rice M. and Mary S. Gatewood, but did not state whether it was community or separate property; that Lydia E. W., as executrix, took possession of the property of the estate, and holds and controls the same as such executrix; that the will set forth in the answer of defendants, Moss, was the only paper probated as the will of G. M. Pierce, deceased; that Lydia E. W. Pierce, now Moss, was residuary legatee and devisee under that will.

*De Berry & Smith*, for appellants.

*Brown, Hall & Ramsey*, for appellees.

Watts, J. Com. App.— By the judgment rendered in the district court of Johnson county April 14, 1871, in the cause styled Pearce & Beall v. L. E. W. Moss *et al.*, the will of G. M. Pierce was set aside and annulled. The parties in interest in this cause were defend-

ants in that, and represented by attorneys and guardians *ad litem*. There are none of the pleadings in that case disclosed by the record before us, and we have no means of ascertaining that the validity of G. M. Pierce's will was not an issue properly presented by the pleadings for adjudication; in the absence of anything showing the contrary, it will be presumed that the matter was properly presented, and that the judgment is correct.

At the time of that adjudication the constitution then in force gave the district court original and exclusive jurisdiction " for the probate of wills, for the appointing of guardians, for granting of letters testamentary and of administration, for settling the accounts of executors, administrators and guardians, and for the transaction of all business appertaining to the estates of deceased persons, minors, idiots, lunatics and persons of unsound mind."

Thus it will be seen the court had jurisdiction to annul and set aside the will; and presuming in favor of the correctness of the judgment, as nothing appears to the contrary, it must be considered that the will of G. M. Pierce thereafter had no binding force or effect. The effect of that adjudication, as presented by the record before the court, was that thereafter no such will existed, and, for all legal purposes, that it had never existed. Hair *v.* Wood, 58 Tex., 77.

It might appear from the record in that case that the validity of the will was not made an issue by the pleading, and therefore not supported by any legal basis. Or it might appear that the adjudication in that particular was limited to some special object or purpose. But, as before remarked, none of these things are shown by the record before the court.

There can be no doubt but that the bequests to the appellees Florence and Mary were special legacies. These differ from general legacies in this: that if there is a deficiency of assets it must be made up from the general legacies, and the special legacies will not abate in favor of creditors and others until the general legacies have been exhausted. And on the other hand, when these specific legacies are disappointed, as by loss or failure of the particular fund, the legatee will not be entitled to compensation out of the effects of the estate. See Roper on Legacies, vol. 1, p. 190.

If G. M. Pierce, in making the special devises of the Gatewood land, did so upon the supposition that he would become the owner of the entire locative interest by reason of the understanding with his father respecting the exchange of lands, but that this was never accomplished, and thereby the specific legacies were to that extent

disappointed, this would not give the legatees the right to other lands to make up the deficit. For had he known that the title to the entire locative interest would not be vested in him, he might probably have given to the legatees the tract that he intended to convey in exchange to his father. But that he would have done so cannot be held by the court, as it would then be the will of the court and not that of the testator.

It is claimed that the title to a one-half interest in the eight hundred acres of the Gatewood land was defeated and the land lost to the special legatees by the wrongful act of their mother; that therefore they are entitled to recover from her the value of the land lost.

It seems from the evidence that there was not any complete understanding between G. M. Pierce and his father concerning the exchange of land. At the time G. M. Pierce made the deed that he forwarded to appellant, Mrs. Moss, with directions to deliver it to his father, that portion of the Gatewood land had not been patented, and he instructed his wife to deliver the deed, and in the event the land was not patented, his father was to refund in money the value of the land not patented. It seems that the father was not willing to accept the deed on these terms, but deferred the matter until it should be determined that the patents would issue.

This seems to have been the attitude the affair occupied for several years; ultimately the deed was demanded, and Mrs. Moss then refused to deliver it. She was interested in the community property, as well as executrix of the will of her deceased husband. And, acting as such, if she did not think proper to carry into effect the unfinished agreement for the exchange of land, it does not necessarily follow that she would be personally liable to the special legatees for the value of the land, that she might in this way have secured to them, but did not, and that notwithstanding such failure might result in reducing the special legacies, and enhancing the portion she would take as residuary legatee under the will. It seems that the property belonged to herself and husband; that is, it was community property. While he had the right and power to dispose of it during his life, her right to an undivided half interest was as absolute and perfect as was his to the other half. And, as has been held, he could no more dispose of her community interest by will, against her consent, than he could thus dispose of her separate property. If, however, he should by will dispose of her community interest or separate property, and she should elect to take under the will, then she would be estopped from claiming against

the will under which she had elected to take by asserting her separate or community right to the property.

It does not clearly appear, from an inspection of the will, that Pierce intended to dispose of his wife's community interest in the Gatewood land. The language of the will in that particular is the same as to each special legatee. The following extract will suffice for the purpose of this discussion, viz.: "I will that my oldest daughter, Florence Lee Pierce, have set apart to her, her heirs and assigns forever, one-third of my interest in about one thousand six hundred acres of land, patented to Rice M. and Mary S. Gatewood, near the town of Buchanan, in said county." This language imports no more than that he bequeathed one-third of *his* interest in the land. What then was his interest? As it was community property, the law vested in his wife a right to one-half of the land that accrued to them from the location of the certificate. And he was chargeable with a knowledge of that fact. It would seem that if he had intended to thus dispose not only of his own interest, but that of his wife also, that such intent would have been evidenced by clear and explicit language.

The mere fact that he makes her the residuary legatee does not put her to an election as to whether she will take under the will or claim by virtue of her legal rights. To have this effect there must be some provision of the will that makes it inconsistent for her to accept under it, and claim her own property, vested in her by the law.

It would seem, then, that a resort must be had to the context of the will, to determine whether or not the testator intended to devise to his children his wife's community interest in the land. After the several special bequests to the three children, the will proceeds to provide for the wife in the following terms: "And to my beloved wife, Lydia E. W. Pierce, I will and bequeath all the remainder of my estate in lands, goods, chattels and credits and rights in trust to raise and educate and maintain my said children in a similar manner until they are grown up, and to pay all my just debts; and in lieu of about $800 received by me from her father's estate, in order to enable my said wife to more effectually discharge the several obligations herein enjoined upon her, I have heretofore caused title to be made to her of several tracts of land." And after mentioning matters connected with the bequests to the children, it is provided that the wife is to have the remainder; and full power is conferred upon her to sell, alienate, charge or dispose of the same in any manner that she might deem proper.

It will be observed that the residuum left to the wife was charged with important trusts. From this the means were to be derived for maintaining and educating the children, the payment of the testator's debts, and to recompense his wife for her money that he had used.

The record does not show the amount or value of this property, except as stated by the inventory; and excluding from the consideration the Gatewood land and the law books, watch and compass specially bequeathed, the whole estate was then valued at $2,425, and the three hundred and twenty acres of land patented to Morgan P. Ellis, which was not placed upon the inventory. It may be supposed that after maintaining and educating the children, paying the debts of the estate, including the $800 due the wife, and paying the taxes and other expenses necessarily incurred, the residue would not amount to a large sum.

It may be assumed that the context of the will does not disclose any specific intent upon the part of the testator to deprive his wife of her community property. Nor can such an intention be gathered from the facts and circumstances surrounding the execution of the will, or the results of the administration of the estate, as they are shown by the record.

This leads to the conclusion that appellant, Mrs. Moss, was equally interested with the children in the Gatewood land. And if she in the execution of the trust, so fully confided to her, and in the management of her own interests in the land, deemed it best not to deliver the deed to the Ellis land, when demanded several years after the death of her husband, it does not seem to us that she would be liable to the appellees for the value of their interest in the land lost thereby. If her refusal to carry into effect the exchange contemplated by the testator was superinduced by a fraudulent intent, and for the specific purpose of defrauding appellees, then they might, perhaps, have a remedy against her. But as presented by the record, it is not necessary that the question be here decided.

It clearly appears that Jackson Hill Pierce, one of the special legatees, was dead at the time the will was made; whether that fact was known to the testator or not, the same result would follow. The special bequest is void. Ordinarily at common law, in case the special bequest is void, the residuary legatee would take when the terms of the residuary clause were sufficiently comprehensive. Ferguson v. Hedges, 1 Harrington, 254.

In the case of Green v. Dennis, 6 Conn., 292, the devise was void, as the devisee was incompetent to take; and it was there held

that although the devise was void from the beginning, the heir was preferred to the residuary devisee, on the ground that the testator never intended that the specific devise which was void should fall into the *residuum*. The residuary devise was of "the rest and residue of the estate not therein disposed of."

This doctrine seems to be well supported by numerous adjudicated cases, among them Brewster *v.* McCall, 15 Conn., 297; Van Courtland *v.* Kipp, 1 Hill, 290; Van Kleeck *v.* Ref. Dutch Church, 6 Paige, 600; James *v.* Janes, 4 Paige, 115; while in Hayden *v.* Stoughton, 5 Pick., 528, etc., it was said in effect that a devise, void because the devisee is incapable of taking, will go to the one to whom the testator gives "all his estate not before disposed of."

Under our statute there is no distinction as to the operation of the will upon real and personal property; the common law distinctions in this respect have no application in this state. Here all classes of property are placed upon the same footing, and the will operates upon it alike. Pasch. Dig., art. 5361. And in case of a lapsed legacy or devise the statute also prescribes the result. Pasch. Dig., art. 5365.

The question then arises as to what disposition shall be made of a void devise or bequest under our system. It seems that this should be determined by the intention of the testator, which intention is to be ascertained in the same manner as in other matters relating to his will. Here the bequest is to the son, "his heirs and assigns forever." While the residuary clause is to the effect that he bequeaths to his wife "all the remainder of his estate in lands, goods, chattels and credits and rights;" all in trust, as heretofore stated, to have and to hold to her own separate use, etc., with full power to sell, alienate, charge or dispose of as she might see proper. However, in authorizing her to sell land or other property for the purposes mentioned, that willed to his children is specially excepted. Philleo *v.* Holliday, 24 Tex., 42.

It seems to us that, resulting from a reasonable construction of the entire will, it was not the intention of the testator that the property bequeathed to Jackson Hill Pierce should go to the residuary legatee. This property should be considered as not disposed of by the will, and subject to the laws of descent and distribution.

Mr. Thompson, in his work entitled Charging the Jury, § 16, says: "It is well settled law that written instruments are always to be construed by the court; and except when they contain technical words, or terms of art, or when the instrument is introduced in evidence collaterally, etc., etc., the construction of a written contract is a question of law for the court, and it is error to submit

such a question to the jury." It is also said in the same section that "The obligation of the court to expound the meaning of written instruments to the jury, and not submit such questions to them, embraces every species of writings, contracts, records, deeds, wills, and all others." While in Taylor v. McNutt, 58 Tex., 73, it was said "That, as a general rule, it was the duty of the court to instruct the jury upon the legal effects of written evidence, admits of no doubt, but it is also true that there are exceptions to that general rule. When the effect of a writing does not depend entirely upon the construction or meaning of its terms, but upon extrinsic facts and circumstances, then it becomes the duty of the court to submit for the consideration of the jury the instrument, together with the attending facts and circumstances adduced in evidence, with such instructions upon the legal effect of the instrument as would meet the various phases presented by the extrinsic evidence."

This rule applies with full force to wills as well as all other writings. If there is no ambiguity, the court must construe the will and give to the jury its legal effect. But if there is such ambiguity as will authorize the introduction of extrinsic evidence, then the court must submit that feature of the will to the jury, with such instructions as will meet the various phases presented by the evidence.

For the errors indicated the judgment ought to be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion adopted November 23, 1883.]